1822.

JONES
v.
POWELL.

### JONES *against* POWELL and others.

It seems, that the statute of limitations (Sess. 24. ch. 183. 1 *N. R. L.* 184.) does not apply to the action of *dower*; as by the statute, relative to dower, (Sess. 10. ch. 168. 1 *N. R. L.* 30.) the widow may, at any time during her life, demand her dower, and the tenant of the freehold has the means of coercing an assignment of dower.

The jurisdiction of Chancery is concurrent as to legal, and exclusive as to equitable bars; and a collateral satisfaction will constitute, in equity, a good bar of a freehold right.

. If a widow entitled to dower in land, of which her husband died seized, accepts an equivalent in other land, or in money, she will be barred from asserting her claim of dower; especially, after possessing and enjoying the equivalent, for above twenty years, and seeing the land of which she was dowable, sold, and improved by the purchaser, without setting up her claim.

*June 10th,*
*and July 27th.*

THE bill, filed the 27th of *July*, 1820, stated, among other things, that the plaintiff, as widow of her first husband, *Robert Ludlow*, was entitled to dower in the real estate of which he died seised, on the 30th of *March*, 1798, being lands in *Newburgh*, and elsewhere. That *R. L.*, by his will, dated *March* 1, 1798, devised to *Daniel Ludlow*, and *Francis Lewis*, jr. the lot of land in *Newburgh*, on which the testator then lived, with the houses, &c. *in trust*, to sell the same, and to divide the monies arising from the sale, equally, between his wife and children; and the plaintiff was appointed executrix, and the said *D. L.*, and *F. L.*, executors. That after the death of the testator, the said trustees sold the same lot, &c. to the defendants, *J. & T. Powell*, for 5000 dollars, in fee, in 1799; and, in *April*, 1814, *J. & T. Powell*, sold the same property to the defendants, *Reeve & Falls*. That while *J. & T. Powell* were in possession, the rents and profits amounted to 15,000 dollars; and that since the defendants, *R. & F.*, have possessed the same, the rents and profits have amounted to 9000 dollars. That in *February*, 1802, the plaintiff mar-

ried *Robert W. Jones,* who died in *January,* 1814. The bill *prayed,* that the dower of the plaintiff, in the premises mentioned, might be assigned to her, and that an account might be taken of the rents and profits of the said estate, &c. and for general relief, &c.

The defendants, *J. & T. Powell,* in their answer, among other things, stated, that in the spring of 1799, they hired the premises of the plaintiff for one year, at the yearly rent of 150 dollars; the plaintiff reserving for her own residence a part of the house, worth about 50 dollars. That in *May,* 1800, they took possession, under the deed, from the trustees to them, and occupied the same until they sold to *R. & F.* That *Daniel Ludlow* died in 1819, and *Francis Lewis* in 1817. The defendants denied that the plaintiff ever applied to them for dower, or for any account, while they owned and possessed the property; and they alleged, that the plaintiff, after the death of her husband, *R. L.,* applied to the executors, *D. L.* and *F. L.,* for her dower in the premises, and refused to ratify the sale to *J. & T. Powell,* unless she was paid for her dower. That the plaintiff told the defendants, that *D. L.* had paid the sum of 1250 dollars, for a house and lot in *Newburgh,* which the plaintiff had previously bargained for, and which she was to have in lieu of her right of dower in the premises in question; and that the plaintiff often expressed her satisfaction at the exchange. That in the spring of 1800, the plaintiff removed from the premises of which *R. L.* died possessed, and took possession of the house so purchased for her, which she has ever since occupied. The defendants charged, that the plaintiff received the house and lot so purchased, in full satisfaction of her dower in the premises in question, and that they were a full equivalent for it. That the defendants never heard of the plaintiff's pretending to any claim of dower in the premises, until after the sale to *R. & F.*; but, on the contrary, that the plaintiff had often said, that she had received

1822.

JONES
v.
POWELL.

the house and lot purchased for her, in full discharge and satisfaction of her right in the said estate of her deceased husband, &c. and that no demand was ever made on the defendants by the plaintiff, or by any one in her behalf, before the filing of the bill, &c. The defendants submitted, that if the plaintiff was entitled to dower, it was only the value thereof at the time of her husband's death, and that the defendants ought to be allowed the value of their improvements; and they offered, by way of plea, the statute of limitations of twenty years, in bar of the right of dower, and of six years, to limit the recovery for rents and profits, &c.

The defendants, *Reeve & Falls*, put in separate answers, which contained, in substance, the facts stated in the answer of the other defendants.

Proofs were taken in the cause, which was brought to a hearing on the 10th of *June* last.

*B. Robinson* and *J. Duer*, for the plaintiff.

*Betts* and *Wells*, for the defendants.

THE CHANCELLOR. The original right of the plaintiff to her dower in the premises, as they were owned and enjoyed by her husband, at his death, is not disputed. The only question is, whether she be not barred of that right by the lapse of time, or by the acceptance of a collateral satisfaction in lieu of it.

1. It was upwards of twenty years between the time that the plaintiff removed from the premises, in which her dower is claimed, and the filing of the bill. Her removal was a voluntary act, after she had occupied these premises for upwards of two years, subsequent to her husband's death. But the lapse of the twenty years was not a good legal bar, within the statute of limitations. If there was no other statute provision on the subject, I think it might

well have been contended, that the general act of limita-
tions, passed in 1801, (*L. N. Y.* Vol. 1. 185.) applied to
actions of dower.   By that act, "no person shall make
an entry into lands, but within twenty years next after his
right or title accrued."    This limitation would apply to
the possessory action, called, in the case of a widow, a
writ of dower *unde nihil habet*, (*F. N. B.* 147.) and
which lies in case of deforcement of dower, by the refusal
of the heir or purchaser to assign any dower.    This limi-
tation, however, might not have applied to the *writ of
right of dower*, which, it is said, was necessary in the case
where she was deforced of part only of her dower.   (*F.
N. B.* 8 C.)   If the widow lost her dower by default, the
statute of *W.* 2. 13 *Edw.* I., (and which has been re-enact-
ed among the provisions of the act of the 26th of *January*,
1787,) gave her the writ *quod ei deforceat*, which put in
issue her right of dower, and which seems to have been in
the nature of a writ of right.    As far as her action, at law,
belonged to the class of possessory actions, founded on the
right of entry, it would have fallen under the same limita-
tion as an action of ejectment, and, as far as it partook of
the nature of a writ of right, (for the writ of right, strictly
so called, was only applicable to persons who claimed an
estate in fee,) it would seem to fall within the limitation of
twenty-five years, applicable to the 'writ of right.   The
same general statute declares, that "no action, for the re-
covery of any lands, &c., shall be maintained, &c., unless
on a seisin or possession, &c., either of the plaintiff, &c.,
or of the ancestor or predecessor of the plaintiff, within
25 years, before such action brought."    The general and
sweeping language of this act, no less than the sound po-
licy of it, would dictate the application of it to the action
of dower, as well as to any other real action.    But the
act of *April* 7th, 1806, (1 *N. R. L.* 60.) declares, gene-
rally, that "a widow shall be at liberty, at any time du-
ring her life, to make a demand of her dower, agreeably

to the act of the 26th of *January,* 1787." It also provi-
ded, " that the heir, or other proprietor or owner, after the
expiration of the widow's quarantine of 40 days, might
cause notice 'in writing to be given to her to make demand
of her dower, within 90 days thereafter, and if she neglect-
ed, he might apply to the Surrogate, and cause her dower
to be admeasured to her."

We may, therefore, put out of the consideration of this
case, the effect of any legal limitation to the action of
dower at law. The better opinion would be, that the li-
mitation to 20 or 25 years, according to the nature of the
action, under the act of 1801, was done away by the act of
1806 ; and to guard against the inconvenience of such an
outstanding right, the act gives to the tenant of the free-
hold the means of coercing the assignment of dower.

2. The next point is, whether the plaintiff is not to be
considered as equitably barred by means of the compensa-
tion, which she accepted, and rested upon during the lapse
of 20 years.

The facts are, that she was appointed and acted as ex-
ecutrix of her husband's will, and that will devised the pro-
perty in question to two trustees, to be sold, and the
proceeds " equally divided among his wife and chil-
dren." The husband died in *March,* 1798, and the trus-
tees, on the 30th of *December,* 1799, sold the lands devi-
sed (being the house and lot in *Water-street,* in the village
of *Newburgh*) to the defendants, *J. & T. Powell,* for
5000 dollars, which was deemed the full value of the entire
right to the lot. The plaintiff was then in possession, and
refused to consent to a sale until another house and lot
were provided for her and her children, and she actually
negotiated for the house and lot in *Smith-street,* in the same
village, and which were purchased and paid for by the trus-
tees, out of the estate of the testator, and a deed, in fee,
taken on the 11th of *December,* 1799, to the plaintiff, and
the two trustees, by which means the plaintiff became

seised, in fee, of one undivided third part of the house and lot in *Smith-street*; and in *May*, 1800, she removed into it, and has continued in it to this day, undisturbed, and without the charge of rent. She declared, at the time of the negotiation, and purchase, and removal, and repeatedly since, and to several persons, that she was perfectly satisfied with the arrangement, and that she considered the exchange beneficial to her, and that she had, during the negotiation for the purchase, agreed with the trustees to relinquish her right in the one house, if the purchase was made of the other. It was generally understood in the village of *Newburgh*, at the time the plaintiff took possession of the *Smith-street* house and lot, that she received them in satisfaction of her right of dower in the other. This conclusion was drawn by individuals who conversed with her, and from the facts attending the transaction. Her admissions to several persons were, that she took the one house and lot, under the deed, in satisfaction of her right to the other; and her relinquishment of the one house, and taking possession of the other, was an execution of the agreement. She resided in the house in *Smith-street*, and saw, under her eye, great and costly improvements, made by the purchasers, upon the lot in *Water-street*, and the sale of it, in 1814, to the defendants, *R.* and *F.*, for the sum of 17,000 dollars; and, when applied to, at that time, by *P. T.*, one of the sellers, relative to a rumour, that she intended to assert a claim of dower to the land, she replied, that she had never authorized such a report. She remained passive, and without advancing any claim or demand, until the commencement of the present suit. Is she not now equitably barred? After receiving such a compensation, which she accepted as a satisfactory equivalent, it would be very unjust to allow her to set up her claim of dower. Her acquiescence in the equivalent, for so long a period, during which the property has been within her own view, and has undergone great changes.

1822.

JONES
v.
POWELL.

and expensive improvements, is an equitable estoppel, and ought to have barred her conscience from the assertion of this claim. It is an act of fraud upon the purchasers, and to be condemned upon every principle of policy and morality.

Chancery has a concurrent jurisdiction as to legal bars; and as to equitable bars, its jurisdiction is exclusive.

At law, the wife can only be opposed by a legal bar; but now, says Lord *Loughborough*, (*Mundy* v. *Mundy*, 2 *Vesey*, jr. 122.) equitable bars are in daily practice. If the dry legal title be in controversy, it must be made out at law; but, otherwise, the Court of Chancery has a concurrent jurisdiction; and, in these cases of equitable bars, its jurisdiction is exclusive. A collateral satisfaction is not pleadable at law, in bar to a freehold right. So says Lord *Coke;* (*Co. Litt.* 366.) but in equity, the conscience of the party is under a better discipline, and the acceptance of a term of years, or of a sum of money, or of any other kind of collateral satisfaction, will constitute a good bar. (*Harg.* note 224. *Ibid.*) There is no reason, why a widow, who is a free and competent moral agent, should not have the capacity to agree to any fair arrangement which convenience or prudence dictated, by which her dower should be extinguished by an equivalent substitute, in money or in land. In the time of *Littleton*, when freehold titles were regarded, at law, with great and scrupulous care, if not with superstitious reverence, it was still held, (*Litt.* s. 41.) that if the wife be endowed *ad ostium ecclesiæ*, or by her husband *ex assensu patris*, and, after his death, she entered and agreed to the dower, she was concluded to claim any other by the common law. Her acceptance of the one, and waiver of the other, formed, at that early period, a legal bar; and equity, in that instance, enlightened the case, and relaxed the rigour of the rules of the common law.

I shall, upon these facts, hold the plaintiff concluded from asserting her claim of dower, and that they form an equitable bar.

Bill dismissed, without costs.